G4Ston, Judge,
 

 after stating the pleadings and proofs as above set forth, proceeded as follows:—
 

 
 *29
 
 The plaintiff is not in this court an assignee. It is impossible for us to declare upon these proofs, that the alledged assignment was for a fair and valuable consideration. The o instrument of the 21st of August 1829, shows a contract founded in champerty, the most odious species of maintainance, prohibited by the common law, and denounced by statute, where he who maintains the suit of another is to have a share of the thing gained as a compensation. It was not therefore in the capacity of Taylor’s agent, as the bill un-truely alleges, but as á purchaser upon shares of Taylor’s right to sue, that the plaintiff first interfered with this dormant claim, and got into possession a part of the negroes which gave rise to it. There should be clear evidence that this illegal contract was wholly abandoned, and one perfectly fair and unexceptionable substituted in its stead, before the character of the plaintiff’s claim can recommend it to the aid of this court. Now instead of abandoning it — after the alleged new contract was formed — and at the very term where
 
 that
 
 is offered ,for probate and registration — the plaintiff presents^ in court, as valid and subsisting, and Taylor acknowledges as still binding upon him, the very instrument August 1829. Must we not infer that the new contract, as it is termed, was new only
 
 inform,
 
 that it grew out of, and was subsidiary to, and
 
 in execution
 
 of the former? The note exhibited, if in truth it
 
 ever
 
 was in Taylor’s hands, of which there'is
 
 no proof,
 
 axtrinsic or intrinsic, is of so
 
 singular
 
 character as to yield no support to the plaintiff’s side of the issue. It was drawn up by the plaintiff, and has
 
 no date.
 
 We have therefore no means of judging when, nor for what it was executed. If given, as is pretended, in part consideration of an
 
 absolute
 
 purchase, what explanation is to be offered of the stipulation that Taylor should not negotiate it? Supposing that the true agreement between the parties was for a division of the property, confidently expected to be obtained, and that to hold out the appearance of an absolute purchase, it was deemed expedient that a note should be made by Slade, — the stipulation was probably inserted to prevent Taylor from using it in violation of the
 
 actual bargain.
 
 The endorsement of a payment on it in July, has no sanction from Taylor. It is^ in the plaintiff’s handwriting, without
 
 *30
 
 signature or witness, and is dated when Taylor had nearly if not quite reached complete fatuity. It is evidence at least at that time the note was in the plaintiff’s possession— when but a very trifling sum was alleged to be paid upon it, and it is not shown that it was found among Taylor’s effects at his death, nor otherwise than by the endorsement, that one cent was paid upon it. There is nothing then left for the plaintiff’s allegation of a purchase for a valuable consideration to stand upon, except Taylor’s acknowledgments — and if the proofs already considered lead to the result that the bargain was in truth for a division of the spoil, to which the parties were to give the semblance of a sale, it was to be expected of him not to hesitate in signing the instrument containing the formal acknowledgment of a consideration, and that in talking of the transaction afterwards, he should speak ofit as a sale. Nay it is'probable, as he said to some, that
 
 some
 
 money, a few dollars, might have been advanced to him to enable him to attend the cock-fight in Edgecombe, but it not to be credited if so large a sum as $250, was then actually paid to this reckless and indigent man, and a note passed for securing the sum of $250 more, that no
 
 show
 
 of either should be made, and that he should continue in appearance ever afterwards what at the time of the alleged purchase he truth was, destitute of all means of subsistence but those furnished by his brother. When to these considerations we add Taylor’s habitual drunkenness, mental imbecility, and blind confidence in those he supposed bis friends — notice the close connection between him and the plaintiff, evinced by the contract of August 1829 — and remember that the poor creature had been
 
 till then
 
 looking all around him in vain for some person who would accept on any7 terms, a transfer of his right, to vex his wife, and interfere with the property saved for her out of the wreck of the portion which he got in marriage — we repose in these acknowldgments no confidence whatever.
 

 The plaintiff does not claim as assignee of a legal interest. His assignment is confined to Taylor’s interest, whatever it may be, in the property which was the subject of the division in 1824; and does not affect the property held under the division of 1819. If it can have any operation it is an
 
 *31
 
 assignment of his wife’s entire distributive share in the ne-groes which her deceased brother, Joseph Monk, obtained in the division of 1819, of her share also of those parts of the negroes of which.Thomas Monk died entitled in remainder, and which accrued to her deceased sister Martha, and to her deceased brother Joseph, and one half of the share which was bequeathed to her directly in these last mentioned ne-groes by her father. — When it was made, the subjects the assignment were held in open hostility to his claim. The plaintiff comes here to have it enforced as an assignment in Equity. It is not such, unless made fairly and for valuable consideration. And we are all decidedly of the opinion that it was not so made.
 

 Without therefore noticing the other grounds of- defence, it is the opinion of this court that the plaintiff’s bill be dismissed with costs.
 

 Per Curiam. Bill dismissed.